**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| DENISE ROSARIO,<br><br>      plaintiff,<br><br>   v.<br><br>ST. TAMMANY PARISH HOSPITAL SERVICE DISTRICT NO. 1 D/B/A ST. TAMMANY PARISH HOSPITAL<br><br>      defendant. | **CASE DOCKET NO: 18-1701**<br><br>**DIVISION: CIV**<br><br>**JUDGE: SARAH S. VANCE**<br><br>**MAGISTRATE: DANA M. DOUGLAS** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE OR LIMIT EXPERT TESTIMONY OF DR. JUDY SHEPARD-KEGL**

This action involves Defendant's failure to adequately accommodate Ms. Denise Rosario during a visit to St. Tammany Parish Hospital. Ms. Rosario is profoundly Deaf and requires auxiliary aids and services to communicate in medical setting. On January 4, 2018, Ms. Rosario sought pregnancy-related medical care from St. Tammany Parish Hospital and requested that an in-person sign language interpreter be provided. Instead of providing an in-person sign language interpreter, Defendant's employee attempted to utilize a Video Remote Interpreting ("VRI") device. Plaintiff alleges that the VRI device malfunctioned and that, even when briefly functional, Defendant did not adequately use the device to communicate the same information that would have been conveyed to a hearing person.

Dr. Shepard-Kegl is a nationally-recognized expert in neurolinguistics, signed languages, ASL, and Deaf culture who performed a comprehensive assessment of Ms. Rosario's communication abilities and preferences. Defendant argues that Dr. Shepard-Kegl's testimony

should be substantially limited at trial because it is not based on sufficient facts or data and is not reliable. Defendant seeks to exclude "general background" testimony regarding on-site interpreters and VRI, factual recitations, testimony regarding the limitations and problems that arise with the use of VRI systems in a hospital setting, and medical testimony. Defendant's arguments mischaracterize Dr. Shepard-Kegl's opinions and speak more to the weight of Dr. Shepard-Kegl's testimony rather than its admissibility. Defendant's brief is largely based on selective, out-of-context statements of Dr. Shepard-Kegl from her 103-page report. Dr. Shepard-Kegl's report is relevant to this litigation and her testimony will assist the trier of fact in understanding the issues in dispute.

### LAW AND ARGUMENT

Pursuant to Rule 702 of the Federal Rules of Evidence, the admission of expert testimony is proper if the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, in understanding the evidence or determining a fact at issue. The court must first determine whether the expert possesses the requisite qualifications to render an opinion on a particular subject matter. *Wagoner v. ExxonMobil Corp*., 813 F. Supp. 2d 771, 799 (E.D. La. 2011). If the expert's qualifications are found to be sufficient, the court then must examine whether the expert's opinions are reliable and relevant. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. In *Daubert*, the Supreme Court enumerated several non-exclusive factors that courts may consider in evaluating the reliability of expert testimony, including "(1) whether the expert's theory can or has been tested, (2) whether

the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community." *Daubert*, 509 U.S. at 593-94. The Supreme Court has cautioned that the reliability analysis must remain flexible. Several *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Thus, "not every Daubert factor will be applicable in every situation . . . and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 326 (5th Cir. 2004).

Put simply, "[t]here is no more certain test for determining when experts may be used than the common sense [sic] inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003) (quoting FED. R. EVID. 702 Advisory Committee Notes); *see also Shawler v. Ergon Asphalt & Emulsions, Inc.*, 2016 WL 1019121, at *3 (E.D. La. 2016). Moreover, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility and should be left for the finder of fact. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (quoting *Daubert*, 509 U.S. at 596) (internal quotation marks omitted).

**1. Dr. Shepard-Kegl is a qualified expert in the fields of neurolinguistics, signed languages, ASL, and Deaf culture and her opinions are reliable.**

As a preliminary matter, Defendant does not challenge Dr. Shepard-Kegl's qualifications as an expert in her field or the methodologies she employed to assess Ms. Rosario's communication preferences and abilities. This is likely because Dr. Shepard-Kegl has been accepted as an expert witness by several district courts. *See Shelton et al v. State of La. et al*, Civ. No. 16-14003 (E.D. La. filed Aug. 22, 2016) (Africk, L); *Saunders v. Mayo Clinic*, No. CIV. 13-1972 JNE/HB, 2015 WL 774132, at *2 (D. Minn. Feb. 24, 2015); *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 390-93 (D. Me. 2011). *Bates v. Delmar Gardens N., Inc.*, Civ. No. 15-783, Slip op. 20 (E.D. Mo. Sept. 13, 2017). Dr. Shepard-Kegl's methods for testing English and ASL proficiency in Deaf individuals have also been deemed reliable. *See Bates*, Civ. No. 15-783, at 21.

Dr. Shepard-Kegl's report is 103 pages and details Ms. Rosario's communication abilities in spoken English, written English, and American Sign Language ("ASL"). Dr. Shepard-Kegl also provides background on the grammatical and structural differences between English and ASL and details the battery of tests she used to determine Ms. Rosario's preferred means of communication. Dr. Shepard-Kegl explains the methodology she used to gauge Ms. Rosario's communication abilities in ASL and English, including elicitation and linguistic analysis.[1] She also uses both standardized and individualized assessment techniques in her analysis.[2] Dr. Shepard-Kegl provides a 76-page explanation of the assessments she performed to support her opinions regarding Ms. Rosario's communication abilities and limitations.

---

[1] Dr. Shepard-Kegl Expert Report (hereinafter "Report"), R. Doc. 38-4 at 6.
[2] *Id.*

Dr. Shepard-Kegl employed no less than four assessments to determine Ms. Rosario's proficiency in ASL, including her knowledge of ASL grammar, verbs of location, and verbs of motion production.[3] Dr. Shepard-Kegl also assessed Ms. Rosario's basic interpersonal communication skills and cognitive academic language proficiency with regards to ASL.[4] These assessments were completed by Dr. Shepard-Kegl through peer-reviewed methodologies that she has used to assess the communication abilities of hundreds of Deaf individuals.[5] Part of Dr. Shepard-Kegl's analysis also included inquiry into Ms. Rosario's cultural profile as it relates to her association with Deaf culture, past preferences for communication, and use of interpreters.[6]

Dr. Shepard-Kegl also evaluated Ms. Rosario's English proficiency, including her ability to speak, read lips, write, and read.[7] Dr. Shepard-Kegl even tested Ms. Rosario's knowledge of English vocabulary, including vocabulary that would be encountered in a medical setting.[8] As part of her testing, Dr. Shepard-Kegl reviewed hours of video and pages of Ms. Rosario's writing in English to determine her proficiency in ASL, written English, and spoken English. Thus, Dr. Shepard-Kegl's is clearly qualified to opine on Ms. Rosario's language proficiencies and preferences and her report contains all the hallmarks of reliability.

    **2. Dr. Shepard-Kegl's testimony will assist the trier of fact in understanding the complexities of interpreting in a medical setting, issues that are not readily apparent to laymen.**

    1. *Dr. Shepard-Kegl's Testimony Regarding Deaf Culture and American Sign Language Will Assist the Trier of Fact.*

Background information about ASL and Deaf culture is crucial to understanding why Dr. Shepard-Kegl's report is so relevant to this litigation. Contrary to popular belief, ASL is not just

---

[3] Report at 29.
[4] *Id.*
[5] Report at 43.
[6] Report at 27-29.
[7] Report at 39.
[8] Report at 59.

"English on the hands" but a completely independent language with its own grammatical rules and structures.[9] ASL, unlike English, relies heavily on figure and ground constructions and the use of classifiers in verbs of motion and location.[10] ASL also has very different word order and grammatical rules from English. Put simply, ASL and English are mutually unintelligible languages as different to each other as Russian and English.[11]

Deaf individuals often face cultural barriers to communicating with hearing individuals because they are less able to access background information from the ambient environment, such as through the radio, television, or even overhearing casual conversations.[12] This means that Deaf individuals must actively seek out information and need to go to great lengths to establish background information, a practice that seems like overkill to hearing individuals.[13] This can lead to strained conversations where hearing individuals assume that Deaf individuals are seeking irrelevant information while Deaf individuals feel like hearing individuals are withholding information.[14]

This is information that is not generally known by the average "layman." Defendant claims that Dr. Shepard-Kegl's has "very little of use to offer the fact finders," but her report is chalked full of useful information about American Sign Language, Deaf culture, communication methodologies, etc. Dr. Shepard-Kegl is a tenured professor in linguistics and her report cites an extensive array of peer reviewed articles and publications. This information is useful and will aid the Jury in applying the facts of the case to the law.

---

[9] Report at 10.
[10] *Id.*
[11] Report at 7.
[12] Report at 11.
[13] *Id.*
[14] *Id.*

2. *Dr. Shepard-Kegl's Testimony Regarding Ms. Rosario's Communication Abilities will Assist the Trier of Fact.*

Dr. Shepard-Kegl also evaluated Ms. Rosario's English proficiency, including her ability to speak, read lips, write, and read.[15] Dr. Shepard-Kegl even tested Ms. Rosario's knowledge of English vocabulary, including vocabulary that would be encountered in a medical setting.[16] As part of her testing, Dr. Shepard-Kegl reviewed hours of video and pages of Ms. Rosario's writing in English to determine her proficiency in ASL, written English, and spoken English.[17] Dr. Shepard-Kegl determined that in an ideal, well-lit environment, Ms. Rosario could only lipread a mere 9% of what was said.[18] Similarly, Dr. Shepard-Kegl performed a battery of well-recognized reading tests and determined that Ms. Rosario can read solidly only at a second-grade level and that she could only understand 31% of the medical and general vocabulary.[19] In contrast, Dr. Shepard-Kegl also determined that Ms. Rosario has "strong competency in ASL grammar" and that in ASL she is "near-native to native in proficiency."[20] Dr. Shepard-Kegl's findings, testing, and opinions related to the same will clearly aid the Jury.

3. *Dr. Shepard-Kegl's Testimony Regarding Video Remote Interpreting Will Assist the Trier of Fact.*

Defendant also argues that Dr. Shepard-Kegl should not be allowed to provide background testimony regarding the use of in-person interpreters and VRI services because such testimony will not be useful to the finder of fact. Defendant further argues that Dr. Shepard-Kegl lacks the qualifications to offer opinions regarding VRI systems and their use in a medical setting. As an initial matter, Dr. Shepard-Kegl has been a certified sign language interpreter for

---

[15] *See* Report at 39.
[16] *See* Report at 62-64.
[17] *See* Report at 79-97.
[18] *See* Report at 85
[19] *See* Report at 90 (for her reading level, see IV.2d) and 94 (for her knowledge of medical and general vocabulary, see IV.2.e.ii).
[20] *See* Report at pp. 95, 97.

over 40 years,[21] is certified to interpret in a medical setting,[22] has developed the curriculum[23] of and taught courses on how to interpret in a medical setting,[24] and has performed assessments of Deaf individual's communication abilities in ASL on more than 150 occasions.[25] Defendant does not explain how Dr. Shepard-Kegl's decades of experience interpreting for Deaf individuals in a medical setting and work with the Deaf community would not qualify her to testify regarding the nuances of ASL and VRI services and common problems that occur when interpreting in a medical setting.

Dr. Shepard-Kegl consulted with Douglas Newton, a former director of an interpreting agency who set up VRI services in Maine, to obtain background information regarding the use of VRI in a medical setting.[26] She also cites a standard practice paper on VRI that was published by the National Registry of Interpreters for the Deaf,[27] an organization in which she is a member.[28] Defendant argues that Dr. Shepard-Kegl's testimony regarding St. Tammany Parish Hospital's VRI system should be excluded because "she has not offered any factual evidence to support her general opinions on VRI."[29] Defendant's argument is misplaced because inquiries into the source of Dr. Shepard-Kegl's opinion speak to the <u>weight</u> of the evidence rather than its <u>admissibility</u>. *Primrose Operating Co.* 382 F.3d at 562.

Defendant's assertion that the background information regarding in-person sign language interpreters and VRI services will not be helpful to the trier of fact actually illustrates the need

---

[21] Dr. Shepard-Kegl CV (hereinafter "CV"), R. Doc. 38-3 at 1; *see also* Report at 6.
[22] CV at 1.
[23] CV at 11.
[24] CV at 8.
[25] Report at 43.
[26] Report at 70.
[27] Report at 72.
[28] CV at 11-12.
[29] R. Doc. 38-2, p. 6.

for an expert in this area. Dr. Shepard-Kegl's report provides information regarding the differences between ASL and English and will assist the trier of fact in understanding the necessity of her assessment of Ms. Rosario's ability to communicate in those languages through VRI and in person.

Dr. Shepard-Kegl's testimony will clearly assist the trier of fact regarding Ms. Rosario's ability to communicate through a VRI in a medical setting and the communication barriers that Deaf individuals face on a regular basis. As Defendant illustrates, the differences between ASL and English are not apparent to laymen who have no familiarity with ASL or the Deaf community. Also, allowing Dr. Shepard-Kegl to testify regarding the history of the VRI and how it differs to the use of an in-person interpreter will aid the trier of fact in understanding these nuanced and complicated issues. Dr. Shepard-Kegl should be permitted to testify regarding general background information on ASL, use of VRI services in a medical setting, and how the use of a VRI differs from the provision of an in-person interpreter. Dr. Shepard-Kegl's testimony on these topics will clearly provide the trier of fact with specialized knowledge not readily apparent to the general population.

While some of Dr. Shepard-Kegl's opinions may touch on the adequacy of Defendant's use of VRI services to interpret for Deaf patients, this does not make Dr. Shepard-Kegl's opinion inadmissible, but instead goes to the weight assigned to her opinion. *See United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) ("[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."). Defendant will have the opportunity to cross-examine Dr. Shepard-Kegl regarding her testimony, at which point the trier of fact can determine the weight allocated to her opinions.

**3. Arguments regarding the recitation of facts in Dr. Shepard-Kegl's report go to the weight of testimony rather than admissibility.**

Defendant also argues that Dr. Shepard-Kegl's testimony should be limited to only her assessment of Mr. Rosario and should exclude opinions based on the facts of the case. Again, this argument clearly goes to the weight afforded to Dr. Kegl-Shepard's testimony rather than its admissibility. In fact, this argument regarding Dr. Kegl's testimony has been rejected before. In *Saunders v. Mayo Clinic*, a court in the District of Minnesota rejected the defendant's arguments that the factual recitations in Dr. Kegl-Shepard's report should be excluded, finding that the defendant's arguments were "directed more to weight than admissibility." Civ. No. 13-1972, slip op. at 4 (D. Minn. Feb. 24, 2015). Similarly, the court in *Bates* found the defendant's arguments to exclude Dr. Kegl-Shepard's testimony because of their factual basis to be without merit. *Bates,* Civ. No. 15-783, at 21.

**4. Arguments regarding communication about medical treatment also go towards the weight of testimony rather than admissibility.**

In the same vein, Defendant's arguments that Dr. Shepard-Kegl is not qualified to offer testimony regarding the origin of Ms. Rosario's deafness and her progressive vision loss go to the weight of Dr. Shepard-Kegl's testimony rather than its admissibility. Dr. Shepard-Kegl met with Ms. Rosario in person and assessed her communication abilities in ASL and English. Part of this assessment was learning Ms. Rosario's background and her affiliation with the Deaf community and Deaf culture.[30] In order for Dr. Shepard-Kegl's assessment to be reliable and comprehensive, she needed to take into account the origin of Ms. Rosario's hearing loss and any other impairment that would affect her ability to communicate in ASL, such as loss of vision.

---

[30] Report at 27.

Consequently, Dr. Shepard noted in her report that Ms. Rosario suffers from Usher's Syndrome, which is the cause of her deafness and has caused her vision loss. This information was provided by Ms. Rosario to Dr. Kegl-Shepard during her face-to-face assessment. Dr. Shepard-Kegl's reliance on Ms. Rosario's self-reported diagnosis of Usher's Syndrome does not make her opinion inadmissible. Rather, discussion of the unique communication barriers that Ms. Rosario faces, which were determined through Dr. Shepard-Kegl's extensive assessment and testing of Ms. Rosario's communication abilities, are exceedingly relevant and helpful to the trier of fact. Defendant will have the opportunity to cross examine Dr. Shepard-Kegl.

## CONCLUSION

Defendant's arguments in support of excluding certain areas of Dr. Shepard-Kegl's testimony are solely based on the factual support for her opinions rather than their reliability. Accordingly, Defendant's arguments do not speak to whether Dr. Shepard-Kegl's opinions are admissible, but rather, the weight they should be assigned by the trier of fact. Dr. Shepard-Kegl's expert testimony is clearly reliable, relevant, and will assist the trier of fact with understanding the issues in dispute. As such, Defendant's motion to exclude her testimony should be denied.

Respectfully Submitted,

BIZER & DeREUS, LLC
Attorneys for Plaintiff
Andrew D. Bizer, Esq. (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus, Esq. (LA # 35105)
gdereus@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:/s/ Garret S. DeReus
**GARRET S. DEREUS**

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record on March 19, 2019, by ECF filing.

By:/s/ Garret S. DeReus
**GARRET S. DEREUS**